DONALD PETERS et al., Plaintiffs-Appellees, v. CHICAGO WESLEY MEMORIAL HOSPITAL et al., Defendants-Appellants.

(No. 55375;

First District—June 1, 1971.

*Rehearing denied June 30, 1971.*

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, (Robert H. Joyce, Keith A. Reed, Edward W. Bergmann, and Anthony J. Crement, of counsel,) for appellants.

Asher, Greenfield, Gubbins & Segall, of Chicago, (Lester Asher, Marvin Gittler, and Stephen B. Rubin, of counsel,) for appellees.

Mr. PRESIDING JUSTICE BURKE delivered the opinion of the court:

This is an appeal from a decree ordering specific performance of an employee representative election agreement executed by the plaintiffs and the defendants. Defendants contend that the court erred in enforcing the agreement since an essential element of the agreement was disregarded and further that the determination that the terms of the agreement were satisfied was against the manifest weight of the evidence.

On February 10, 1970, plaintiffs and defendants negotiated an agreement providing for an election among certain employees of the Chicago Wesley Memorial Hospital (Hospital) to determine whether those employees desired to be represented by the Hospital Employees Labor Program (Union) for purposes of collective bargaining. The agreement provided, *inter alia,* that the State of Illinois Department of Labor act as (and hereinafter referred to as) the Election Supervisor and that the Election Supervisor conduct a hearing to determine the validity of any objections which may be filed as to the conduct of the election. The agreement also provided that the rules and standards of the National Labor Relations Board (NLRB) would be employed in the conduct of the election.

The agreement further provided that in the event a majority of the eligible employees in the election select the Union as their representative, this fact was to be certified by the Election Supervisor to the Union and the Hospital, both of which in turn were to "proceed forthwith to negotiate in good faith a collective bargaining agreement pertaining to the employees involved."

On the same date the parties entered a supplemental agreement relating to an arbitration of the dismissal of two Hospital employees if the Union was selected by the eligible Hospital employees as their representative.

The election was held on February 24, 25, and 26, 1970, on the Hospital's premises, and the polls were open from 6:30 A.M. to 9:00 A.M. and from 2:30 P.M. to 5:00 P.M. on each day. The Election Supervisor assigned Robert Macie and Gene Leonard to conciliate or supervise the election, and poll watchers were designated by the Union and by the Hospital.

Employed in the election was one large wooden ballot box containing an opening on the top for the insertion of the ballots. One side of the box contained a door on which was constructed a "built-in" lock. It

appears that the ballot box used in the election had been borrowed from the City of Chicago Board of Election Commissioners.

The election was held and thereafter the Election Supervisor announced the final results:

| | |
|---|---|
| Total Vote Cast | 685 |
| For the Union | 472 |
| For NO Union | 110 |
| Challenged Votes | 86 |
| Void Ballots | 17 |

On March 4, 1970 the Hospital filed objections to the conduct of the election with the Election Supervisor and a hearing was held on the objections on March 11, 1970. The testimony taken at the hearing revealed that on the first day of the election the Hospital's assistant superintendent suggested to Union representatives that "rasp" (sic) and padlock be placed on the door of the ballot box, but the Union representatives objected and refused to join in such request to the Conciliator. The testimony further revealed that on the second day of the election an attorney for the Hospital who was present at the polling place requested the Conciliator to place seals on the top opening of the ballot box when the box was not in use. The Conciliator refused, stating that the box had been borrowed and that placing seals on the box would be defacing property belonging to another. The box, when not in use and including overnight breaks, remained in the possession of the Conciliator.

Hospital witnesses testified that after the polling had closed on the second day of the election, they observed Conciliator Macie and a Union poll watcher walking toward Macie's automobile pushing the ballot box in a wheel chair. After Macie had opened the trunk of the automobile, he walked to the front of the vehicle to check a traffic citation which had been placed on the windshield; at the same time, the Union poll watcher who had accompanied Macie was observed placing the ballot box into the trunk of the automobile, "in a jostling manner." There was evidence that the box had to be maneuvered because of its weight and its odd size in order to properly set it inside the trunk.

The testimony further revealed that the Conciliator left the ballot box in the presence of Hospital security guards on the morning of the second day of the election while he went to park his automobile and that he returned about ten minutes later. Substantially the same thing occurred on the morning of the last day of election.

Witnesses were called by the Hospital who testified to the procedures used in the conduct of similar elections at two other hospitals in Chicago. They testified that the ballot boxes used in those elections were sealed when not in use and that signatures were placed over the seals.

On March 18, 1970 the Election Supervisor issued his decision certifying the results of the election. The decision recited in part:

"* * * I hold that the material facts presented establish the validity and integrity of the collective bargaining election of February 24, 25 and 26, 1970; that a preponderant majority of the employees of Chicago Wesley Memorial Hospital did in fact choose the Hospital Employees Labor Program as their collective bargaining agent; that there is no evidence of illegalities or of tampering with the ballot boxes [sic] on the part of representatives of the employees; that the hospital security force shared fully in guarding the ballot boxes [sic] and supervising the balloting; that no evidence has been adduced of any improper conduct on the part of Conciliators Macie and Leonard (supervisors of the election) in the slightest degree; that there has been no showing of evidence by attorneys of the Chicago Wesley Memorial Hospital which conceivably raise questions as to the fairness of the election.

* * *

The employees, I find, have fairly and honestly voted to be represented by a union of their own choosing in collective bargaining negotiations. In short, my decision is that the employees are entitled to the union representation they have clearly chosen."

In a telegram dated March 22, 1970 the Union requested the Hospital to fulfill the terms of the agreement of February 10, 1970 and to meet for the purpose of negotiating a collective bargaining agreement and selecting a neutral arbitrator. The Hospital refused the request and plaintiffs filed this action to compel specific performance of the agreement.

The transcript from the hearing before the Election Supervisor was entered into evidence at trial. It appears from the transcript that the Election Supervisor stated that the Department of Labor of the State of Illinois had conducted such elections and hearings in the past and that the Department had its own rules and standards in that regard. The transcript also reveals that the Election Supervisor stated at the hearing that he was not concerned about the agreement between the parties hereto, and that what he was "mainly interested in is the conduct of the election. This is what I am concerned about * * *" and "[a]ll I am concerned about is my people handling the election and the way they conducted themselves in this election." At trial, however, the Election Supervisor testified that he "definitely cared as to what the parties agreed."

It also appears from the transcript that the Election Supervisor did not receive a copy of the parties' agreement and had no knowledge of its

existence prior to the election; he testified at trial that he was aware of the existence of the agreement prior to the election, but that he did not receive a copy of it until the day of the hearing on the objections. The transcript further reveals that the Election Supervisor refused to permit the Hospital to cross-examine one of the election Conciliators who had been called as a witness by and examined by the Election Supervisor, or to permit the Hospital to call either Conciliator as its own witness.

It was brought out at trial that the Election Supervisor handed down his decision prior to receiving a brief of the law from the defendants. The Election Supervisor explained that he attempted to get in touch with the defendants' attorneys prior to handing down the decision to determine whether the defendants would feel bound by the decision, that his efforts in that regard were to no avail, and that he felt that no brief would be forthcoming.

The Hospital also sought to show that approximately 250 Hospital employees, if called as witnesses, would testify that they voted against the Union in the election. Petitions signed by a number of Hospital employees, reciting that they voted against the Union, were entered into evidence at trial; however, some of those employees who were actually called as witnesses, initially denied signing the petitions. It appears that some of the signatures on the petitions were solicited directly by the Hospital's supervisory personnel.

The decree ordered specific performance of the agreement against the Hospital, the decree in part reciting:

> "* * * the Court now finds that Plaintiffs have duly performed all terms of the Contracts dated February 10, 1970 and that there is insufficient evidence to excuse Defendant Hospital from full performance thereon, that the ballot box was at times unsealed but at all times locked; that there is no evidence of tampering with the ballot box; and that even if there were 250 witnesses to testify and they voted 'no' that would increase the tally of 110 for a difference of 140 votes; and further if the Court accepted the testimony of the additional 140 votes and deducted that from the 472 votes that would leave 332 votes for 'yes', and, further, said testimony, if accepted, is insufficient to defranchise an uncoerced majority of employees of the Defendant Hospital."

The defendants appeal from this decree.

Defendants contend that the portion of the agreement relating to the employment of the NLRB rules and standards in the conduct of the election was an essential element of the agreement, that the NLRB rules and standards were in fact not employed in the election, and that therefore the court erred in ordering defendants to perform their part of the

agreement. Defendants further state that the "real issue" of this case is whether the NLRB rules and standards were employed in the election and that that issue was not passed upon by a trier of fact.

██ This action was brought by plaintiffs for an order upon the defendants to specifically perform the agreement of February 10, 1970, and as such it was addressed to the sound discretion of the court. (*Sweeting v. Campbell,* 8 Ill.2d 54, 56.) Such discretion should be exercised only after consideration of all circumstances of the case with a view of serving justice. The issue therefore was not whether the rules and standards of the NLRB were employed in the election, but whether the intent of the parties was substantially complied with in the conduct of the election.

██ A review of the record in this case discloses that the election was conducted in substantial accord with the intent of the parties, as manifested by their written agreement. Their intent was to hold an election wherein certain designated employees of the Hospital could fairly and responsibly relate their approval of or opposition to the Union acting as their representative in collective bargaining with the Hospital. To this end the parties agreed that the election should be by secret ballot and should be supervised by a neutral party, the State of Illinois Department of Labor. It was agreed that campaigning would be permitted by both the Union and the Hospital, and that all eligible employees would be encouraged to vote in the election.

The record further discloses that the rules and standards of the Illinois Department of Labor were employed by the Election Supervisor at the hearing on the defendants' objections. The election Supervisor consistently stated that he was solely concerned with hearing the defendants' objections and hearing the evidence. He determined that the objections relative to the Conciliator's handling of the ballots and the ballot box were without merit; there was no evidence of wrongdoing or impropriety in that regard. Although, as defendants argue, NLRB rules and standards require measures to insure the "sanctity of the ballot box" (*N.L.R.B. v. Capitan Drilling Company,* 408 F.2d 676; *Austill Waxed Paper Co.,* 169 N.L.R.B. #169,) the circumstances of the instant case are unlike those of the defendants' cited authorities. Here, the ballot box was in the possession or sight of either the Conciliator or the Hospital security force during the election. The facts here do not disclose the requisite "appearance of irregularity" so as to fall within the authorities cited by defendants.

After the hearing on the objections, the Election Supervisor certified that the Union had been duly elected by a majority of the eligible Hospital employees as their collective bargaining representative. After defendants' refusal to abide by the decision of the Election Supervisor,

this action was instituted to enforce the parties' agreement relative to the steps set out therein to be taken subsequent to the certification. The court was then faced with the question of whether there had been substantial compliance with the terms of the agreement.

It was not necessary that the election and the hearing on the objections were "letter perfect;" nor does the failure of the election or the hearing to have been "letter perfect" mean that the agreement was not substantially complied with. In the case of *Great Lakes Screw Corporation v. N.L.R.B.*, 409 F.2d 375, the court stated at page 378:

> "* * * neither a perfect record nor 'laboratory conditions' are prerequisites to a fair hearing. The record, *when viewed as a whole*, must only reflect proceedings which are conducted in a manner 'free from bias and prejudice and imbued with the desire to accord to the parties equal consideration.'" (Emphasis supplied.)

The above wording in the *Great Lakes* case is particularly appropriate to the circumstances of the case at bar.

It should be noted that the Election Supervisor did not receive a copy of the election agreement until after the election had been held, raising the reasonable inference that neither the Election Supervisor nor his designated Conciliators could have known that the election was to have been governed by the NLRB rules and standards. It would be highly irregular to require the Illinois Department of Labor under these circumstances to assume that it was to apply the rules and standards of another administrative body when called upon to conciliate an election, when the Department has its own set of rules and standards.

■■ The fact that the Election Supervisor handed down his decision before the defendants were able to file a brief of authorities is irrelevant. The actions of the Hospital led the Election Supervisor to believe that the Hospital was unwilling to be bound by his decision in any event.

The facts show that the terms of the agreement of February 10, 1970 have been substantially complied with, that the finding that plaintiffs have performed their obligations under the agreement was not against the manifest weight of the evidence as defendants contend, and that the court was right in ordering defendants to perform under the agreement. For these reasons the decree is affirmed.

Decree affirmed.

LYONS and GOLDBERG, JJ., concur.